*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

H.L. and J.L. o/b/o V.L.,

        Plaintiffs,

v.

MARLBORO TOWNSHIP BOARD
OF EDUCATION,

        Defendant.

Civil Action No. 16-9324 (FLW) (DEA)

**OPINION**

**WOLFSON, United States District Judge:**

Presently before the Court are Cross-Motions for Summary Judgment filed by Plaintiffs H.L. and J.L. (collectively, "Plaintiffs" or the "Parents"), on behalf of their minor daughter, V.L., a child classified as eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and by Defendant Marlboro Township Board of Education ("Defendant" or the "District"). The instant Motions arise out of Plaintiffs' appeal of a summary decision by Administrative Law Judge Thomas Betancourt (the "ALJ"), finding that Defendant was not required to reimburse Plaintiffs for the costs of V.L.'s placement in private school, because Plaintiffs failed to timely notify Defendant of their intent to unilaterally place V.L. in private school at public expense, as required under IDEA and the corresponding New Jersey regulations. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A).[1] For

---

[1] 20 U.S.C. § 1415(i)(2)(A) provides, in pertinent part, that:
    Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil

1

the reasons that follow, the Court: (1) affirms the ALJ's finding that Plaintiffs' notice was untimely under IDEA; and (2) remands this matter for further consideration of, *inter alia*, whether Plaintiffs are entitled to any reimbursement for V.L.'s private placement, and whether V.L. was denied a compensatory education.

I. **BACKGROUND**

Plaintiffs are the parents of V.L., a learning-disabled girl who attended public school within the Marlboro Township Public School District from first through seventh grade. This case arises out of a due process petition filed by Plaintiffs, seeking tuition reimbursement from Defendant, pursuant to IDEA, for their unilateral placement of V.L. in private school for the 2015-2016 academic year, as well as a compensatory education for V.L. for the period of time during which Defendant allegedly denied V.L. a free appropriate public education ("FAPE"). Before recounting the relevant factual and procedural background of this case, I will briefly review the statutory framework in which Plaintiffs' claims arose.

A. **The Individuals with Disabilities Education Act**

The IDEA requires "states that receive federal education funding to ensure that disabled children receive a 'free appropriate public education' (FAPE)." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 425–26 (3d Cir. 2013) (quoting 20 U.S.C. § 1412(a)(1)); *see H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 408 (3d Cir. 2017). The IDEA "protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they

---

action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.
20 U.S.C.A. § 1415(i)(2)(A).

2

require specialized services that the public institution cannot provide." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) (citation omitted).

To comply with the IDEA, "school districts must identify and evaluate all children who they have reason to believe are disabled under the statute." *Munir*, 723 F.3d at 426. To provide a FAPE, the school district must develop and administer an Individualized Education Program ("IEP") for each student that is classified as eligible for special education. *S.H. v. State–Operated Sch. Dist. of Newark*, 336 F.3d 260, 264 (3d Cir. 2003); *see C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010) ("The FAPE required by the Act is tailored to the unique needs of the child by means of an [IEP]."). "An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *Cape Henlopen*, 606 F.3d at 65. While the school district is "not required to 'maximize the potential'" of each disabled student, *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 197 n. 21 (1982)), it "must offer an IEP that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Munir*, 723 F.3d at 426 (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009)). "Consistent with its obligation under IDEA, New Jersey has enacted statutes and regulations which require all local Boards of Education in the State to identify children between the ages of five and twenty-one who may need or benefit from special education." *L.P. v. Edison Bd. of Educ.*, 265 N.J. Super. 266, 273 (Law. Div. 1993) (citing N.J.S.A. 18A:46–6).

"The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations." *Cape Henlopen*, 606 F.3d at 66. In that regard, a "parent who believes that a school has failed to provide a FAPE may request [an administrative] hearing, commonly known as a due process hearing, to seek relief from the school district for its failure to provide a FAPE," and may appeal an adverse decision to federal district court.[2] *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009); *see Cape Henlopen*, 606 F.3d at 66 ("The parent or guardian of a minor student who is denied the rights and procedures set forth in the IDEA is afforded the opportunity to file an administrative complaint and to appeal an adverse determination to a federal district court."). In New Jersey, this process entails filing a complaint and request for a due process hearing with the New Jersey Department of Education ("NJDOE"). *See* N.J.A.C. 6A: 14–2.7(c); *Edison Bd. of Educ.*, 265 N.J. Super. at 273-74 ("[The] DOE has been established as the forum agency for handling 'due process' petitions to review local agency decisions and actions regarding the provision of an FAPE for handicapped children."). In special education cases, the due process hearing is conducted by an Administrative Law Judge in New Jersey's Office of Administrative Law ("OAL"). *Edison Bd. of Educ.*, 265 N.J. Super. at 274. The ALJ's decision on "the appropriateness of the IEP is final and binding on the parties and must be implemented without undue delay." *Id.*; *see* N.J.A.C. 6A: 14–2.7(g).

Aggrieved parties may appeal the ALJ's final decision by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). "After examining the administrative record and hearing additional evidence at the request of either party, the reviewing court is authorized to grant 'such

---

[2] Specifically, as detailed further below, a parent who believes that a school district is not providing his or her child a FAPE may unilaterally remove the child from public school, enroll the child in private school, and then file a due process petition seeking reimbursement for the cost of the child's placement in the alternative school. *See* 20 U.S.C. § 1412(a)(10)(C); *Munir*, 723 F.3d at 426.

relief as [it] determines is appropriate' based on the preponderance of the evidence." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(i)(2)(C)). "These remedies include, *inter alia*, 'attorneys' fees, reimbursement for a private educational placement, and compensatory education.'" *Id.* (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 185 (3d Cir. 2009). Against this legal background, I turn to the facts of this case.

### B. Factual Background[3]

V.L. is a fifteen-year-old girl who resides with her parents, H.L. and J.L., in Marlboro Township, New Jersey. *See H.L. and J.L. o/b/o Marlboro Township Board of Educ.*, OAL No. 8677-16, Final Decision (Nov. 28, 2016) ("ALJ Op."), 2. V.L. has been diagnosed with certain learning disabilities, and, as a result of those disabilities, V.L. was classified as eligible for special education and related services through the IDEA, under the category of Specific Learning Disability. *See id.*

From first through seventh grade, V.L. attended public school within the Marlboro Township Public School District. *Id.* On January 9, 2015, while V.L. was in seventh grade, her Parents sent a letter to the District expressing their dissatisfaction with V.L.'s progress in reading, writing, and mathematics, and requesting an Independent Evaluation of V.L. in the psychological, educational, speech, and language areas. Certification of Jennifer Casazza ("Casazza Cert."), Ex. D. The Parents further requested Assistive Technology and Central

---

[3] The following facts are drawn from the ALJ's decision and other documentary evidence presented in this case. As detailed below, because the ALJ reached his decision solely on the ground that Plaintiffs failed to timely provide notice of their intent to enroll V.L. in private school, without considering the threshold issues of whether Defendant denied V.L. a FAPE and whether V.L.'s private placement was appropriate, the Court will focus on the facts surrounding the notice issue.

5

Auditory Processing Evaluations. *Id.* The District completed Assistive Technology, Independent Language and Literacy, and Audiological Evaluations in March of 2015. *Id.*, Ex. C.

On June 18, 2015, the District held an IEP meeting (the "IEP Meeting") concerning V.L., wherein the District proposed an IEP for the upcoming 2015-2016 academic year. ALJ Op., 3; Casazza Cert., Ex. C. The Parents attended the IEP Meeting, and expressed concerns about V.L.'s academic progress and study habits, including their belief that V.L. had made limited progress in the District's resource center program, about the adequacy of V.L.'s preparation for Spanish quizzes and testing, and regarding the fact that V.L. had missed social studies in the seventh grade. ALJ Op., 3; Casazza Cert., Ex. C. While the IEP proposed placing V.L. within the resource center program for reading and mathematics, the Parents explained their preference for V.L. to remain in the general education setting with supportive services, and requested, *inter alia*, individualized special reading instruction, guided reading opportunities in the general education setting, and various assistive technology resources. ALJ Op., 3; Casazza Cert., Ex. C. The District provided a written copy of the proposed IEP to the Parents on June 24, 2015, which documented the concerns and requests outlined by the Parents during the IEP Meeting. ALJ Op., 3; Casazza Cert., Ex. C.

On June 25, 2015, the Parents sent the District a letter (the "Intake Request Letter") indicating their ongoing concerns regarding V.L's academic progress in reading, writing, and mathematics. ALJ Op., 3; Casazza Cert., Ex. E. Specifically, the Intake Request Letter noted that while the Parents had expressed concerns regarding V.L.'s academic progress at the IEP meeting, the June 24, 2015 IEP proposed "the same program as last year." Casazza Cert., Ex. E. The letter further explained the Parents' belief that the level of instruction needed to accommodate V.L. could not be provided through the District's resource center program or

through in-class support, and that "a more intensive, specialized program [was] needed for [V.L.]." *Id.* Importantly, the Intake Request Letter requested that, "[i]n view of V.L's significant challenges and lack of meaningful progress," the District send V.L.'s records to the Lewis School in Princeton, New Jersey "for an in-take." *Id.* The letter further indicated that the "Lewis School specializes in instruction for students with language-based learning issues which is more suited to meet V.L.'s needs." *Id.*[4]

On July 2, 2015, the District sent a letter response (the "Response") to the Parents' Intake Request Letter. *See* ALJ Op. 3; Casazza Cert., Ex. F. The Response set forth the District's position that V.L. had shown academic progress in all areas over the previous year, as well as its belief that V.L.'s continued participation in the District's programs, along with the implementation of several recommendations stemming from her Independent Evaluations, would foster her development. Casazza Cert., Ex. F. Consequently, the Response stated that the District "declines to send records to the [Lewis School] or any other out of district placement," but indicated that the District would supply records to the Parents directly upon request. *Id.*

On July 9, 2015, the Parents signed a contract (the "Lewis Contract") enrolling V.L. in the Lewis School for the 2015-2016 academic year. ALJ Op., 3; Casazza Cert., Ex. G. Under the Lewis Contract, the Parents agreed to pay the full cost of tuition for the 2015-2016 academic year, in the amount of $36,000.00, over two installments, with 50% due by July 15, 2015, and the remaining 50% due by July 30, 2015. Casazza Cert., Ex. G. On July 12, 2015, the Parents sent a letter to the District, through their counsel, requesting V.L.'s records, including all testing,

---

[4] Nonetheless, the Parents did not formally reject the IEP for the 2015-2016 year, and the Intake Request Letter did not indicate specifically that the Parents intended to make a unilateral placement of V.L. at the Lewis School and seek reimbursement from the District. *See* ALJ Op., 3.

7

transcripts, report cards, and IEP reports. ALJ Op., 3; Casazza Cert., Ex. H. On August 12, 2015, the Parents sent another letter to the District, again requesting V.L.'s records. ALJ Op., 3; Casazza Cert., Ex. I. The August 12, 2015 correspondence also stated that it "shall again confirm that the parents are seeking, in part, reimbursement and/or placement at the Lewis School . . . ." *Id.*

    **C.    Procedural History**

On April 12, 2016, Plaintiffs filed a request for a due process hearing (the "Due Process Petition" or "Petition") with the NJDOE, alleging that V.L. was denied a FAPE, as guaranteed under the IDEA. Pls.' Opp. to Def.'s Mot. for Summ. J., Ex. E. The Petition sought, *inter alia*, reimbursement for the unilateral placement of V.L. in the Lewis School, and a compensatory education for the period of time that V.L. was allegedly denied a FAPE. *Id.* On April 14, 2016, Defendant filed a notice challenging the sufficiency of the Due Process Petition. *Id.*, Ex. F. The NJDOE subsequently transferred the case to the OAL. *Id.* On April 19, 2016, Administrative Law Judge Joann LaSala Candido issued a decision concluding that the Petition was sufficient. *Id.*, Ex. F.

On October 19, 2016, Defendant moved for summary decision of the Petition. Plaintiffs filed their opposition on November 3, 2016, and Defendant filed its reply on November 14, 2016. In a decision dated November 28, 2016, Administrative Law Judge Thomas Betancourt dismissed the Petition, with prejudice, on the ground that Plaintiffs failed to timely notify Defendant of their intent to remove V.L. from public school and place her in the Lewis School at

public expense, as required under 20 U.S.C.A. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A:14-2.10(c)(2).[5] *See* ALJ Op., 7-8.

On December 16, 2016, Plaintiffs filed the instant appeal, asking this Court to perform an independent review of the record and to reverse the ALJ's decision, pursuant to 20 U.S.C.A. § 1415(i)(2)(A). ECF No. 1. On January 17, 2017, Defendant filed its Answer and asserted affirmative defenses. ECF No. 7. Thereafter, the parties filed Cross-Motions for Summary Judgment. ECF Nos. 12, 16.

## II. STANDARD OF REVIEW

The standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003). To that end, the Third Circuit has instructed district courts to apply a "modified version of *de novo* review" to cases brought under IDEA. *Munir*, 723 F.3d at 430. Under this standard, although "the District Court must make its own findings by a preponderance of the evidence, the District Court must also afford 'due weight' to the ALJ's determination." *Mary T*, 575 F.3d at 241 (citation omitted). "The 'due weight' standard requires the court to consider the factual findings from the administrative proceedings prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them." *Id.* (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)). The purpose of the "due weight" standard is to prevent the courts from imposing their own "view of preferable educational methods on the states." *Rowley*, 458

---

[5] In dismissing the Petition, the ALJ did not render a finding on Plaintiffs' claim for a compensatory education.

U.S. at 207. Nonetheless, the Court's review over questions of law and the ALJ's application of legal precepts is plenary. *See Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 528 n. 3 (3d Cir. 1995); *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 500 (D.N.J. 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998).

### III. DISCUSSION

The instant appeal requires this Court to review the ALJ's decision that Plaintiffs are not entitled to tuition reimbursement for their unilateral placement of V.L. in the Lewis School. Specifically, Plaintiffs seek reversal of the ALJ's finding that Plaintiffs failed to timely notify Defendant of their intent to unilaterally place V.L. in the Lewis School, arguing that issues of fact exist as to when Plaintiffs notified Defendant of the intended placement. Plaintiffs further argue that, even if they failed to timely notify Defendant of their intentions, the ALJ erred in treating that failure as a *per se* bar to reimbursement, rather than a discretionary factor for reducing or denying reimbursement. Plaintiffs also cross-move for a declaration that V.L. was denied a FAPE and that V.L.'s placement was appropriate under IDEA, issues that were not resolved by the ALJ. In opposition, Defendant argues that the ALJ correctly determined that Plaintiffs failed to timely notify the District of their intent to unilaterally place V.L. in the Lewis School, and that Plaintiffs' failure was a proper basis for the denial of tuition reimbursement in toto. Defendant also contends that issues of fact exist as to whether the District provided V.L. with a FAPE, and whether V.L.'s placement at the Lewis School was appropriate.

#### A. Reimbursement Under the IDEA

As discussed above, the IDEA "requires States receiving federal funding to make a 'free appropriate public education' (FAPE) available to all children with disabilities residing in the State." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009); 20 U.S.C. § 1412(a). "Parents

10

who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate placement." *Mary T.*, 575 F.3d at 242 (citing 20 U.S.C. § 1412(a)(10)(C)). Nonetheless, "[t]he IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations." *Cape Henlopen*, 606 F.3d at 72. Rather, "[t]he core of the statute . . . is the cooperative process that it establishes between parents and schools." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). Thus, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985).

The IDEA "authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate." *Forest Grove*, 557 U.S. at 247. However, even where a district fails to provide a FAPE and the private school placement is deemed appropriate, the reviewing judge "retain[s] discretion to reduce the amount of a reimbursement award if the equities so warrant . . . ." *Id.*; *see Cape Henlopen*, 606 F.3d at 71. Indeed, the IDEA provides that the cost or reimbursement "*may* be reduced or denied" in the following circumstances:

(I) if--

> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

11

(bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);

(II) if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or

(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.

20 U.S.C.A. § 1412(a)(10)(C)(iii) (emphasis added).[6] Similarly, N.J.A.C. § 6A:14-2.10(c) provides that the cost of tuition reimbursement "*may* be reduced or denied" if, *inter alia*, "[a]t least 10 business days . . . prior to the removal of the student from the public school, the parents did not give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school." N.J.A.C. § 6A:14-2.10(c) (emphasis added).

In the instant case, the ALJ granted Defendant's motion for summary decision and denied Plaintiffs' claims for reimbursement, finding that reimbursement was not warranted in light of Plaintiffs' failure to adhere to the ten-day notice requirement set forth in IDEA and the corresponding state regulations. ALJ Op., 7. In so finding, the ALJ did not reach the threshold determinations of whether Defendant denied V.L. a FAPE, or whether V.L.'s placement in the

---

[6] The IDEA also provides an exception to the notice provision, precluding the reduction or denial of the cost of reimbursement for failure to provide notice if either: (i) the child's parents are "illiterate or cannot write in English"; or (ii) compliance with the notice provision "would likely result in serious emotional harm to the child." 20 U.S.C. § 1412(a)(10)(C)(iv). However, because Plaintiffs have not argued that an exception to the notice requirement is triggered in this case, the Court will not reach that issue for the purposes of the present appeal. Indeed, because Plaintiffs failed to raise the notice exception before the ALJ, on appeal, the Court would be precluded from considering any such argument. *See Woods on Behalf of T.W. v. New Jersey Dep't of Educ.*, 796 F. Supp. 767, 775 (D.N.J. 1992) ("[P]ursuant to the IDEA, failure to raise an issue at the administrative level will result in a waiver of the issue on appeal to a United States District Court.").

Lewis School was appropriate. With respect to the notice issue, the ALJ found that although Plaintiffs "signed a contract enrolling V.L. in the Lewis School on July 9, 2015," Plaintiffs "did not notify [Defendant] that they intended to make a unilateral placement in the Lewis School . . . until August 12, 2015." ALJ Op., 3. Accordingly, the ALJ found that Plaintiffs failed to adhere to IDEA's ten-day notice requirement, and dismissed Plaintiffs' claim for tuition reimbursement.

In so holding, however, the ALJ did not explain his reasoning for finding that Plaintiffs' failure to comply with the notice requirement warranted a wholesale denial of the cost of tuition reimbursement, rather than a reduction in tuition reimbursement. The ALJ's analysis was limited to the following:

> In the instant case [Plaintiffs] do not rebut [Defendant's] assertion that they failed to provide adequate notice. Rather, their joint certification in opposition to the motion for summary decision merely states that they voiced significant concerns about V.L.'s education. While [Plaintiffs'] counsel asserts that there is a factual dispute regarding notice, it is merely argument. The evidence, including [Plaintiffs'] joint certification, demonstrates that notice was not timely provided.
>
> I conclude that [Defendant] is entitled to summary decision because [Plaintiffs] acted unreasonably, and made a unilateral placement without giving proper notice.

ALJ Op., 7-8.

On appeal, Plaintiffs argue that: (i) the ALJ's finding that Plaintiffs failed to adhere to IDEA's notice requirement was improper, because factual disputes exist regarding when Plaintiffs provided notice of their intent to enroll V.L. in the Lewis School; and (ii) even if they failed to adhere to IDEA's notice requirement, the equities of this case do not warrant the wholesale denial of reimbursement.

I turn first to the issue of whether Plaintiffs provided Defendant with adequate notice of their intent to enroll V.L. in the Lewis School at public expense. Under IDEA and the corresponding New Jersey regulation, the cost of reimbursement may be reduced or denied if,

13

"10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the" district of their concerns and their "intent to enroll their child in a private school at public expense." 20 U.S.C.A. § 1412(a)(10)(C)(iii)(I); N.J.A.C. 6A:14-2.10(c)(2). The notice requirement exists "to give the school district an opportunity, 'before the child is removed, to assemble a team, evaluate the child, devise an appropriate IEP, and demonstrate whether or not a FAPE can be provided in the public schools.'" *T.H. ex rel. A.H. v. Clinton Twp. Bd. of Educ.*, No. 05-3709, 2006 WL 1128713, at *6 (D.N.J. Apr. 25, 2006) (quoting *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 (1st Cir. 2004)).

Here, Plaintiffs did not follow the notice requirements under IDEA and the corresponding New Jersey regulation. While Plaintiffs sent correspondence to Defendant on June 25, 2015, expressing their dissatisfaction with V.L.'s academic progress and requesting that Defendant send V.L.'s records to the Lewis School for an intake, the ALJ properly determined that the Intake Request Letter did not constitute sufficient notice under IDEA. In that regard, the statute requires parents to give written notice of their "intent to enroll their child in a private school at public expense." 20 U.S.C.A. § 1412(a)(10)(C)(iii)(I). Even assuming that the Intake Request Letter was sufficient to put Defendant on notice of Plaintiffs' intent to enroll V.L. in the Lewis School, importantly, the Letter lacked any indicia that Plaintiffs intended to seek reimbursement from Defendant for V.L.'s private placement. Accordingly, the Intake Request Letter was insufficient to provide the notice required under IDEA and New Jersey law.

Moreover, Plaintiffs' August 12, 2015 letter informing Defendant that they intended to seek reimbursement for V.L.'s placement at the Lewis School was clearly untimely under the statute. As the record shows, Plaintiffs signed a contract to enroll V.L. in the Lewis School on

July 9, 2015,[7] over a month prior to their notice. ALJ Op., 3; Casazza Cert., Ex. G. The Lewis Contract provided that the "parents . . . agree to pay the full-year tuition as stated below," and further stated that 50% of the tuition was due by July 15, 2015, with the other 50% due by July 30, 2015. Casazza Cert., Ex. G. Thus, by the time Plaintiffs notified Defendant of their intent to place V.L. at the Lewis School at Defendant's cost, Plaintiffs had already enrolled V.L. in the Lewis School and had already paid the full cost of tuition. Accordingly, I affirm the ALJ's finding that Plaintiffs failed to timely provide adequate notice under 20 U.S.C.A. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A:14-2.10(c).

Nonetheless, Plaintiffs maintain that even if the ALJ was correct in finding that Plaintiffs failed to timely notify Defendant, the ALJ erred in treating Plaintiffs' failure to comply with the notice requirement as a complete bar to their claim for reimbursement. The Court agrees.

It is well-settled that, even when a school district fails to provide a FAPE and the placement of a child in a private school is appropriate, the reviewing judge retains "*discretion* to

---

[7] While Plaintiffs argue that the June 25, 2015 Intake Request Letter was sufficient to confer notice under IDEA, and thus, that they timely provided notice thereunder, Plaintiffs do not dispute that V.L. was "removed" from the District on July 9, 2015, the date that Plaintiffs signed the contract to enroll V.L. in the Lewis School. As such, July 9, 2015 is the operative date from which the Court will analyze whether Plaintiffs timely notified Defendant of their intent to enroll V.L. at the Lewis School. However, I note that in *Sarah M. v. Weast*, 111 F. Supp. 2d 695 (D. Md. 2000), the United States District Court for the District of Maryland held that "'removal' in the federal statute pertaining to prior notice requirements refers to the actual physical removal of the child from public school," and therefore, that where "the decision to enroll in private school occurs during a summer recess, the ten business days mark from the beginning of the public school year (or sooner if the child is physically placed in private school)." *Id.* at 701. Nonetheless, the *Weast* standard has not been adopted by the Third Circuit. *See W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F. App'x 563, 568 (3d Cir. 2015) (explaining the *Weast* court's definition of "removal," but declining to adopt that definition). Indeed, Plaintiffs have not even cited to *Weast* in the present appeal. In any event, because Plaintiffs did not argue that the *Weast* standard governs this case before the ALJ, any argument that the *Weast* standard for removal should be considered is forfeited on appeal. *Woods on Behalf of T.W.*, 796 F. Supp. at 775.

reduce the amount of a reimbursement award if the equities so warrant," including for failure to "give the school district adequate notice of their intent to enroll the child in private school" under 20 U.S.C.A. § 1412(a)(10)(C)(iii) and N.J.A.C. 6A:14-2.10(c). *Forest Grove*, 557 U.S. at 247 (2009) (emphasis added); *Cape Henlopen*, 606 F.3d at 71. The discretionary nature of the notice provision is reflected in the plain language of the statute, which provides that the cost of reimbursement "*may* be reduced or denied" for lack of adequate notice, rather than *must* be denied. 20 U.S.C.A. § 1412(a)(10)(C)(iii) (emphasis added); N.J.A.C. 6A:14-2.10(c). Indeed, several courts have exercised their equitable discretion to permit parents to recover the full or partial cost of reimbursement, despite the parents' failure to provide timely notice as required under IDEA and the corresponding New Jersey regulation. *See*, *e.g.*, *F.D. v. Holland Twp. Bd. of Educ.*, No. 05-5237, 2007 WL 2021782, at *10 (D.N.J. July 9, 2007) (permitting parents to recover tuition reimbursement, despite their failure to comply with the notice provision in N.J.A.C. 6A:14-2.10(c)); *W.M. v. Lakeland Cent. Sch. Dist.*, 783 F. Supp. 2d 497, 505 (S.D.N.Y. 2011) (finding that, despite the parents' failure to provide the school with timely notice of their intent to remove their child from public school, "the equities favor[ed] providing partial reimbursement to the [parents]."); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 676 (S.D.N.Y. 2011) (finding that, despite the parents' failure to comply with IDEA's notice provision, "in the exercise of its discretion, and taking into consideration the record as well as the findings of the [administrative tribunal], . . . equitable considerations justif[ied] reducing the Parents' tuition reimbursement request by 75%.").

In this case, the ALJ failed to delineate his reasoning for finding that Plaintiffs' failure to provide timely notice of V.L.'s removal warranted the complete denial of Plaintiffs' reimbursement claim. Rather, it appears that the ALJ treated Plaintiffs' failure to adhere to the

16

notice requirement as a categorical bar to Plaintiffs' reimbursement claim. To that end, after finding that Plaintiffs failed to provide timely notice, the ALJ granted Defendant's motion for summary decision, without explaining why the equities warranted the total denial of Plaintiffs' reimbursement claim, as opposed to a mere reduction in the cost of reimbursement. For example, the ALJ did not explain the extent to which Defendant was prejudiced by receiving late notice of Plaintiffs' decision. *See Upper Freehold Reg'l Bd. of Educ. v. T.W.*, 496 F. App'x 238, 244 (3d Cir. 2012) ("[O]n remand, after the District Court determines whether T.W.'s parents are eligible for tuition reimbursement, it may examine to what extent any reimbursement award may be equitably reduced based on § 1412(a)(10)(C)(iii)(I). If the District Court reaches this issue on remand, it should consider the equities, including . . . the extent to which the District was prejudiced by receiving late notice of the parents' decision.").[8] Additionally, while the ALJ stated generally in his conclusion that Plaintiffs "acted unreasonably," ALJ Op., 8, he provided no explanation, and pointed to nothing in the record that supported that finding. Moreover, because the ALJ did not conduct a hearing or otherwise consider live testimony from the parties, it is clear that his unreasonableness finding was not based upon credibility determinations.

---

[8] This Court's finding that remand to the ALJ for further consideration of the issue of whether an equitable reduction in tuition reimbursement is warranted finds support in *Upper Freehold*. In *Upper Freehold*, upon remanding the case to the district court for further consideration of whether the parents' untimely notice warranted an equitable reduction in tuition reimbursement, the Third Circuit explained that the district court "may, of course, take additional evidence on this issue *or remand the case to the ALJ for further fact-finding*." *Upper Freehold*, 496 F. App'x at 244 (emphasis added). Here, the paucity of the factual record warrants remand to the ALJ, who, as part of an agency with specialized subject matter expertise in this area, is best suited to conduct fact-finding in this case. *See R.R. v. Manheim Twp. Sch. Dist.*, 412 F. App'x 544, 549 (3d Cir. 2011) ("There is a reason for insisting on administrative review and the heightened level of deference accorded to its results: judicial review is 'by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'") (quoting *Rowley*, 458 U.S. at 206).

In short, it is unclear, from the ALJ's decision, whether the ALJ simply assumed that Plaintiffs' failure to provide timely notice to Defendant was a *per se* bar to tuition reimbursement. To the extent that the ALJ short-circuited the equitable analysis by concluding that Plaintiffs' failure to provide timely notice *mandated* the denial of Plaintiffs' claim for reimbursement, the ALJ ran afoul of the Supreme Court's instruction that reducing or denying a claim for reimbursement for lack of notice is a *discretionary* determination. *See Forest Grove*, 557 U.S. at 247.[9] And, to the extent that the ALJ did in fact find that the equities warrant the wholesale denial of reimbursement, because the ALJ did not include an equitable analysis, and did not explain his finding that Plaintiffs acted unreasonably, the Court is unable to review that determination. Therefore, on remand, the ALJ should further elucidate the reasoning underlying his equitable analysis.

Accordingly, the Court will remand this case to the ALJ to supplement his decision. On remand, the ALJ should consider whether, in light of Plaintiffs' failure to timely notify Defendant of their intent to enroll V.L. at the Lewis School at public expense, the equities presented in this case warrant a wholesale denial of Plaintiffs' claims for reimbursement, as opposed to a reduction in the cost of reimbursement.[10]

---

[9] In observing that it appears that the ALJ erred in treating Plaintiffs' failure to provide timely notice as a *per se* bar to reimbursement, the Court does not comment on whether the facts of this case warrant the wholesale denial of Plaintiffs' reimbursement claims, as opposed to a reduction in tuition reimbursement. Nor does the Court hold that it is improper, in any case, to conclude that inadequate notice warrants a denial of tuition reimbursement, without first evaluating whether a school district has denied the child a FAPE, or whether the child's private placement was appropriate. Rather, the Court merely finds that untimely notice does not bar a claim for reimbursement as a matter of law, and that, on remand, the ALJ should supplement his reasoning as to why the equities support denying or reducing the cost of reimbursement as a result of Plaintiffs' untimely notice.

[10] The Court declines to reach the issues of whether V.L. was denied a FAPE and whether V.L.'s placement in the Lewis School was appropriate, because, as a result of the ALJ's decision to dismiss the Petition due to Plaintiffs' untimely notice, the administrative record has not been

### B. Compensatory Education

Next, Plaintiffs argue that, even if the Court affirms the ALJ's finding that tuition reimbursement was not warranted, the ALJ erred in failing to determine whether V.L. is entitled to a compensatory education. "When parents challenge a school's provision of a FAPE to a child, a reviewing court must (1) consider whether the school district complied with IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'" *Mary T.*, 575 F.3d at 249 (quoting *Rowley*, 458 U.S. at 206–07). "In the event that a student has been denied a FAPE, a court may award compensatory education to account for the period the student was deprived of this right." *Lauren P. ex rel. David & Annmarie P. v. Wissahickon Sch. Dist.*, 310 F. App'x 552, 554 (3d Cir. 2009). A compensatory education is a judicially created remedy that is designed "'to place disabled children in the same position they would have occupied but for the school district's violations of IDEA,' by providing the educational services children should have received in the first instance." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (quoting *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 518 (D.C. Cir. 2005)); *see Mary T.*, 575 F.3d at 249 (observing that a compensatory education "is designed to require school districts to belatedly pay expenses that [they] should have paid all along.") (internal quotations and citation omitted).

In the case at bar, the ALJ dismissed Plaintiffs' Petition in its entirety for failure to comply with IDEA's notice provision, without rendering a finding on Plaintiffs' claim for a

---

fully developed on the FAPE and placement issues. Because a fully developed record on those issues would inform this Court's judicial review, the Court refrains from ruling on those issues at the first instance for the purposes of the present Opinion. On remand, should the ALJ find that partial or full reimbursement is warranted, the ALJ must, of course, reach the threshold issues of whether V.L. was denied a FAPE and whether V.L.'s placement was appropriate.

compensatory education. However, because the notice provision pertains solely to claims for reimbursement, it is not dispositive of the compensatory education inquiry. *See* 20 U.S.C. § 1412(a)(10)(C)(iii) ("The cost of *reimbursement* . . . may be reduced or denied . . . if . . . 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency of . . . their intent to enroll their child in a private school at public expense.") (emphasis added). Accordingly, on remand, in the event that the ALJ finds that V.L. was denied a FAPE, he should also determine whether V.L. is entitled to a compensatory education for that period.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, insofar as it seeks affirmance of the ALJ's determination that notice was untimely, and is DENIED, insofar as it seeks affirmance of the ALJ's dismissal of Plaintiffs' Petition. Plaintiffs' Cross-Motion for Summary Judgment is DENIED. This matter is remanded to the ALJ, who, on remand, should consider: (1) whether, in light of Plaintiffs' failure to timely notify Defendant of their intent to enroll V.L. at the Lewis School at public expense, the equities presented in this case warrant a wholesale denial of Plaintiffs' claims for reimbursement, as opposed to a reduction in the cost of reimbursement; and (2) whether V.L. is entitled to a compensatory education.

Dated: November 14, 2017   /s/ Freda L. Wolfson
  Hon. Freda L. Wolfson
  United States District Judge